IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAUL A. PULLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:14-cv-02291-LSC |
| | ) | |
| CITY OF JEMISON, et al, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

Paul Pullen brought this action against the City of Jemison, Chief Shane Fulmer, and Marc McMinn alleging false arrest and malicious prosecution claims under 42 U.S.C. § 1983 and state law defamation claims. The Defendants have moved to dismiss. For the reasons stated below, that Motion is GRANTED.

I.    **Background**[1]

Paul Pullen was a reserve deputy for the Jefferson County, Alabama Sheriff's Department. On November 26, 2011, Pullen followed a minor child on visitation with her paternal family in Jemison, Alabama at the behest of the child's maternal family and Judge Hallie Leavell. From a public road, Pullen saw the child with her

---

[1] For a motion to dismiss, the Court accepts all facts as stated in the Plaintiff's Amended Complaint as true.

father, which was a violation of a court order. He contacted the Jemison Police Department ("JPD") for protection of the child, and when the police arrived, Pullen told them he was an off duty reserve police officer and informed them of the situation with the child. The Jemison police officers asked Pullen to travel onto the property and conduct an investigation. The child's uncle, a former Jemison police officer, apparently got angry that Pullen called the police.

Three days later, Pullen met with someone from Jefferson County Sheriff's Department Internal Affairs where he learned that JPD had issued a warrant for his arrest for impersonating a police officer. Pullen was taken to the Chilton County jail where he was searched and booked.[2] After posting bond, Pullen was released. On November 26, 2012, a state court judge dismissed the charge of impersonating a police officer. On that same day, the Jemison Police Department filed three additional charges against Pullen—criminal trespassing, criminal surveillance, and providing false information to a police officer. Pullen pled guilty to the criminal trespassing charge, and the other two charges were dismissed.[3]

Pullen filed his complaint on November 25, 2014. The Defendants moved to dismiss Pullen's Complaint. Pullen sought and received leave to amend his

---

[2] Pullen does not specify who arrested and transported him—Jefferson County Sheriff's Department or Jemison police.
[3] Pullen related that he pled guilty to criminal trespassing in his response to the Motion to Dimiss.

complaint. In his Amended Complaint, Pullen added Marc McMinn as a defendant. However, it does not appear that McMinn has been served.[4] The City and Fulmer then moved to dismiss the Amended Complaint.

## II. Standard of Review

Rule 8(a) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 678 (internal quotations omitted). *Iqbal* establishes a two-step process for evaluating a complaint. First, the Court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Factual allegations in a complaint need not be detailed, but they

---

[4] The Amended Complaint stated that McMinn would be served, but no return of service has been filed with the Court.

"must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A party need not specifically plead each element in his or her cause of action, but the pleading must contain "enough information regarding the material elements of a cause of action to support recovery under some viable legal theory." *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami, Fla.*, 637 F.3d 1178, 1186 (11th Cir. 2011). Ultimately, the Court must be able to draw a reasonable inference from the facts that the other party is liable. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012). The Court must construe pleadings broadly and resolve inferences in that party's favor. *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006).

**III.    Discussion**

   **A. Service of Marc McMinn**

Because Pullen has not provided proof of service for Marc McMinn, he is not yet a party. Pullen's Amended Complaint, which added McMinn as a party, was effective on April 21, 2015 when the Motion to Amend was granted. The 120 day period for service under Federal Rule of Procedure 4(m) ended August 19, 2015. Pullen has ten (10) days from the date of this Order to obtain service on McMinn. If proof of service is not obtained, the Court will dismiss McMinn from

this action without prejudice.

### B. Section 1983 False Arrest Claims

A statute of limitations defense is an affirmative defense, and plaintiffs are not required to "negate" the defense in their complaint. *See La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quoting *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993)). However, a motion to dismiss on statute of limitations grounds is warranted "if it is 'apparent from the face of the complaint' that the claim is time barred." *Id.* (quoting *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1252 (11th Cir. 2003)). Section 1983 provides a federal cause of action, but it does not have a federal statute of limitations. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007). The personal injury statute of limitations for the state in which the tort arose applies in § 1983 cases. *See id.* Specifically, "in states like Alabama with more than one statute of limitations for personal injury actions, the residual personal injury statute of limitations applies to *all* actions brought under section 1983." *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989) (emphasis added). Requiring a single statute of limitations for all § 1983 actions promotes "uniformity, certainty, and efficiency." *Id.* at 1482. Alabama's general personal injury statute of limitations is two years. Ala. Code § 6-2-38; *see Lufkin v. McCallum*, 956 F.2d 1104, 1106 (11th Cir. 1992).

When a cause of action accrues is governed by "federal rules conforming in general to common-law tort principles." *Wallace*, 549 U.S. at 388. Generally speaking, federal law provides that a plaintiff's action accrues when he has "a complete and present cause of action." *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California, Inc.*, 522 U.S. 192, 195 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)). In cases of false arrest, a plaintiff's cause of action accrues and the statute of limitations "begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. at 397. "An arrest warrant constitutes legal process." *Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 4 (1st Cir. 1995).

In this case, Pullen was arrested on November 29, 2011 pursuant to an arrest warrant issued by the Jemison Police Department. Because he was arrested pursuant to a warrant, he was detained pursuant to legal process. Thus, the statute of limitations period for Pullen's claim commenced on November 29, 2011 and ended two years later on November 29, 2013. However, Pullen did not file this action until November 25, 2014. Accordingly, it is apparent from the face of the complaint that any claim for false arrest against the defendants based on the

November 29, 2011 arrest is time barred and due to be dismissed.[5]

### C. Section 1983 Malicious Prosecution Claims

To prove a case of malicious prosecution under § 1983,[6] a plaintiff must prove "a violation of his Fourth Amendment right to be free from unreasonable *seizures* in addition to the elements of the common law tort of malicious prosecution." *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003) (emphasis in original). An arrest is "the quintessential 'seizure of the person' under our Fourth Amendment jurisprudence." *California v. Hodari D.*, 499 U.S. 621, 624 (1991). Further, the elements of malicious prosecution are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood*, 323 F.3d at 882.

Pullen's claims of malicious prosecution are based on four criminal charges: (1) impersonating a police officer, (2) criminal trespass, (3) criminal surveillance,

---

[5] The Court questions whether a false arrest claim can even be made when the plaintiff was arrested pursuant to a warrant. The First Circuit stated that, "As a general rule, an unlawful arrest pursuant to a warrant will be more closely analogous to the common law tort of malicious prosecution." *Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 4 (1st Cir. 1995). However, insofar as Pullen might have had a false arrest claim, it is time barred.

[6] The Supreme Court in *Albright v. Oliver*, 510 U.S. 266 (1994) held that substantive due process did not provide a right to be free from malicious prosecution. *See id; Wood v. Kesler*, 323 F.3d 872, 881 n.14 (11th Cir. 2003). However, the Court did leave "open the possibility that the Fourth Amendment is the appropriate source of the right to be free from malicious prosecution." *Wood*, 323 F.3d at 881 n.14.

and (4) providing false information to a police officer. As Pullen stated in his Response to the Motion to Dismiss, he pleaded guilty to criminal trespass. Thus, any claim of malicious prosecution based on that charge fails to state a claim because the action did not terminate in Pullen's favor. The other three charges, however, were dismissed. Moreover, Pullen's arrest on November 29, 2011 is a seizure, which led to the charge of impersonating a police officer. The Jemison Police Department never arrested or otherwise seized Pullen for the other three charges. However, because the charges were based on the same set of facts, the November 29, 2011 arrest is plausibly connected to the later charges. Accordingly, Pullen has alleged the facts necessary to make out a malicious prosecution claim.

### i. Chief Fulmer Supervisory Liability

Although Pullen alleges facts sufficient to make out a plausible malicious prosecution claim, he does not allege facts sufficient to state a plausible claim against Fulmer. To state a claim against Fulmer, Pullen must allege facts showing he committed an unconstitutional act himself or that he is liable through acts or omissions as a supervisor. *See Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). Supervisors "are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" *Id.* (quoting *Belcher v. Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)). However,

supervisors can be held liable "either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Such a causal connection can occur when a history of widespread abuse puts the supervisor on notice of the need to correct the violation, when a custom or policy results in the deliberate indifference to constitutional rights, or when the facts infer a supervisor directed subordinates to act unlawfully or failed to stop known unlawful acts. *Id.*

Pullen does not allege that Fulmer personally participated in any unconstitutional conduct. The only instances Pullen's Amended Complaint mentions Fulmer are in the case caption, in the statement of jurisdiction, and in bold subheadings. Pullen does not allege that Fulmer submitted an affidavit for the arrest warrant or that Fulmer arrested him on November 29, 2011. Further, Pullen never alleges any facts that Fulmer played a role in instituting the criminal surveillance or providing false information charges. In his Amended Complaint, Pullen attributes actions to JPD, not to Fulmer or any other individual: "JPD has issued a warrant for is [sic] arrest;" "JPD filed three additional charges." Pullen never alleges any facts that indicate Fulmer himself actually engaged in unconstitutional conduct.

Moreover, Pullen does not allege that Fulmer is liable in his role as supervisor. The Amended Complaint contains no facts showing that Fulmer had knowledge of the criminal charges or that Fulmer was on notice of a widespread custom of maliciously prosecuting individuals. The only fact that might indicate Fulmer is in any way liable is that he is Police Chief, and as such, Fulmer might know of a custom of the police department. Although Pullen does allege that the City of Jemison had a custom or policy of malicious prosecution, he does not take the additional step of linking that policy to Fulmer in his role as Police Chief. The allegation in Count Two against Fulmer says, "The Defendants willfully, maliciously, sadistically and intentionally knowing that they had no probable cause committed under color of state law by the Defendants." This allegation does not reference Fulmer in his role as a supervisor. To adequately state a claim, the complaint needed some type of factual allegation of Fulmer's role in the matter. *See Franklin v. Curry*, 738 F.3d 1246, 1252 (11th Cir. 2013) (affirming dismissal when complaint "allege[d] nothing about the significance of [defendants'] titles, their individual roles in the jail, their personal interactions or familiarity with [plaintiff], their length of service, their management policies, or any other characteristics that would bear on" liability). Thus, Pullen has not pleaded sufficient facts to make out a claim of supervisory liability against Fulmer.

Fulmer also asserts qualified immunity in support of his motion to dismiss. Qualified immunity requires the court to ask two questions: "(1) do the alleged facts show that the government actor violated a constitutional right? and (2) was that constitutional right clearly established?" *Boyce v. Andrew*, 510 F.3d 1333, 1341 (11th Cir. 2007). If either question is answered in the negative, then the government employee is protected by qualified immunity. Here, Pullen has not alleged any facts supporting his claim that Fulmer violated his constitutional rights. Accordingly, Fulmer is entitled to qualified immunity.

### ii. Municipal Liability for City of Jemison

Pullen further claims that the City is liable based on a custom or policy of unconstitutional conduct. As a general rule, municipalities are not liable on the basis of vicarious liability. They can only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694 (1978). Municipal liability can be based on either an express policy or "practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S.Ct. 1350, 1354 (2011).

When a plaintiff alleges a failure to train, supervise, or discipline, a

municipality can only be held liable when the failure amounts to deliberate indifference. *See Vineyard v. County of Murray, GA*, 990 F.2d 1207, 1211–1212 (11th Cir. 1993) (citing *City of Canton v. Harris*, 489 U.S. 378 (1989)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of County Comm'rs of Bryan County, Okl. V. Brown*, 520 U.S. 397, 410 (1997). Typically, a city's deliberate indifference can be established in two ways. First, if the city is aware of a custom or policy of violations and fails to provide training or discipline, the city is considered deliberately indifferent. *See Lewis v. City of West Palm Beach, Fla*, 561 F.3d 1288, 1293 (11th Cir. 2009). Second, in the absence of prior incidents, deliberate indifference can be proven "if the likelihood for constitutional violation is so high that the need for training would be obvious." *Id.*

Pullen's Amended Complaint characterizes his claims by saying that the City,

> (a) failed to discipline or prosecute or in any manner deal with known incidents of misconduct; and (b) refused to investigate the Defendants' misconduct when the charge of impersonating a peace officer was dismissed in Circuit Court; and (c) allowed and condoned the Defendants to file three additional charges against the Plaintiff one year after the event transpired and after the first charge had been dismissed, thereby the City official claimed such incidents were justified and proper.

The Court interprets these three statements as two allegations of municipal

liability—a custom of unconstitutional malicious prosecutions and a failure to discipline or train officers on the standards for instituting criminal charges. In this case, the only two instances of alleged unconstitutional conduct are the charge for impersonating a police officer and the two simultaneous charges of criminal surveillance and providing false information to a police officer instituted a year later.[7] In fact, these actions are best seen as one continuous prosecution of Pullen because they were, in effect, attempts to charge him for a crime based on one set of events. Even when accepted as true, these allegations do not make out a custom or policy on the part of the city. The prosecution of one individual based on one set of events with no allegations of the number of actors involved cannot be described as "so well settled and permanent that [it has] the force of law." *Praprotnik*, 485 U.S. at 144. Without allegations of other prosecutions, the criminal charges filed against Pullen demonstrate nothing more than "an isolated incident." *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004). Pullen's claims thus only create the possibility of wrongdoing, not a plausible allegation. Accordingly, Pullen fails to state a claim that the City had a custom or policy of maliciously prosecuting individuals.

Furthermore, Pullen fails to state a claim of failure to discipline. He has not

---

[7] Because Pullen pleaded guilty to criminal trespass, he cannot claim malicious prosecution based on that charge.

sufficiently alleged a widespread custom or policy that would necessarily put the city on notice of the need to discipline. In fact, Pullen has not alleged any facts showing that a supervisor or decision-maker had any knowledge of the charges filed or that the charges were brought maliciously, beyond a mere recitation of the elements of a failure to discipline cause of action. Additionally, Pullen does not even allege how the prosecutions warranted discipline or how the misconduct presented an obvious threat of constitutional violations. He never alleges that the officers involved did not know how to determine probable cause, that the officers lied in affidavits supporting the charges, or that the city otherwise failed to instruct them on how to institute criminal charges. Pullen merely asserts that he was arrested and charged without probable cause. Without more factual detail, Pullen merely presents a scenario where a constitutional violation is a possibility, not a plausible outcome. However, even if those allegations were sufficient, the Amended Complaint has no factual allegations, other than conclusory statements, demonstrating that City officials knew of the violations and disregarded them to the point of deliberate indifference. Accordingly, his claims against the City are due to be dismissed.

### D. Defamation, Libel, and Slander Claims

In addition to his § 1983 claims, Pullen alleges a claim of defamation.

However, before a person can recover against a municipality on a state tort claim, he must file a sworn statement with the clerk of the city. Ala. Code § 11-47-192. Further, a person must present such tort claims to the city "within six months from the accrual of said claim or [it] shall be barred" Ala. Code § 11-47-23. Pullen never states that he filed such a notice with the City. When the City moved to dismiss based on this failure to file such notice, Pullen did not respond to that argument in his brief. Accordingly, any claim of defamation against the City is due to be dismissed.

Moreover, Pullen fails to state a claim for defamation against Fulmer. The complaint is devoid of any alleged statements made by Fulmer. As noted previously, Fulmer is only mentioned in the caption, the statement of jurisdiction, and subheadings. The only possible statements mentioned in the Amended Complaint that could be defamatory are the arrest warrant and criminal charges, but Pullen attributes his arrest warrant and criminal charges to "the JPD," without specifying a particular officer. Pullen's legal conclusions likewise fail to identify any statement made by Fulmer. The fourth count of Pullen's Amended Complaint says: "The Defendants knowingly made and continues to make false accusations and comments that at the time made knew were false and damaging to the plaintiff. Through the Defendants' false comments, the Defendants committed defamation,

slander and liable [*sic*]." These allegations amount to nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. 662, 678 (2009). Without actual details about who published the allegedly defamatory statements and what those defamatory statements were, Fulmer does not have adequate notice of how he is potentially liable. Thus, any claim of defamation against Fulmer is due to be dismissed.

### IV. Conclusion

For the reasons stated above, the Defendants' Motion to Dismiss is GRANTED. Pullen's claims against Shane Fulmer and the City of Jemison are therefore dismissed with prejudice. Additionally, Pullen has 10 days from the date of this Order to obtain service on Marc McMinn. If service is not obtained, the Court will dismiss without prejudice all of the remaining claims in this case. A separate Order will be entered.

Done and Ordered this 19th day of October 2015.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
182185